IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RODNEY K. FRIZZELL,

        Plaintiff,                        No. CIV S-09-2914 GGH

   vs.

MICHAEL J. ASTRUE,               ORDER
Commissioner of
Social Security,

        Defendant.
_____/

*Introduction and Summary*

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") under Titles XVI and II, respectively, of the Social Security Act ("Act"). The overarching problem for plaintiff is his long time substance abuse. It would be a fair characterization that the record figuratively reeks of that abuse. In this case the ALJ found that plaintiff would be disabled considering all impairments, including substance abuse, but that plaintiff's substance abuse contributed to his inability to work, i.e., plaintiff's other impairments on their own would not be disabling. Plaintiff believes it is the Commissioner's burden to separate out the valid disabling impairments from the substance

1

abuse, but it is not. Plaintiff bears that burden.

For the reasons that follow, Plaintiff's Motion for Summary Judgment is DENIED, the Commissioner's Cross Motion for Summary Judgment is GRANTED, and the Clerk is directed to enter judgment for the Commissioner.

BACKGROUND

Plaintiff, born January 8, 1966, applied on October 31, 2005 for DIB, and on February 21, 2006 for SSI. (Tr. at 12, 368-72.) Plaintiff alleged he was unable to work due to personality disorders and disorders of the back. (Tr. at 368.)

In a decision dated May 7, 2009, ALJ Stanley R. Hogg determined plaintiff was not disabled. The ALJ made the following findings:[1]

1.  The claimant met the insured status requirements of the

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

2

Social Security Act through only December 31, 2005.

2. The claimant has not engaged in substantial gainful activity since September 29, 2004, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).

3. The claimant has the following severe impairments: alcohol abuse and addiction and marijuana abuse with paranoid features, depression, personality disorder NOS, and degenerative changes at L3-4, L4-5, L5-S1, C4-5, and C5-6 (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of listed impairments in 20 CFR Part 404, Subpart P, Appendix 1, (20 CFR 404.1520(d) and 416.920(d)).

5. After careful consideration of the entire record, the undersigned finds that, based on all of the impairments, including the substance use disorder, the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except with substance use, he is unable to sustain light work on a regular and continuing basis as he cannot use opiate medication to control his pain due to his alcohol use. In addition, he is limited to no complex tasks but can perform simple to detailed tasks.

6. The claimant has past relevant work as a construction worker and laborer (20 CFR 404.1565 and 416.965).

7. The claimant was born on January 8, 1966 and was 38 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. The claimant has no transferable job skills (20 CFR 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity based on all of the impairments, including the substance use disorder, there are no jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

11. If the claimant stopped the substance use, the remaining

3

|   |     |   |
|---|---|---|
|   |     | limitations would cause more than a minimal impact on the claimant's ability to perform basic work activities; therefore, the claimant would continue to have a severe impairment or combination of impairments. |
|   | 12. | If the claimant stopped the substance use, the claimant would not have an impairment or combination of impairments that meets or medically equals any of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d) and 416.920(d)). |
|   | 13. | If he stopped the substance use, the claimant would have the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he is limited to no complex tasks but can perform simple to detailed tasks. |
|   | 14. | As indicated above, the claimant has past relevant work as a construction worker and laborer (20 CFR 404.1565 and 416.965.) |
|   | 15. | The claimant has no transferable job skills (20 CFR 404.1568 and 416.968). |
|   | 16. | If the claimant stopped the substance use, considering the claimant's age, education, work experience, and residual functional capacity, there would be a significant number of jobs in the national economy that the claimant could perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966). |
|   | 17. | Because the claimant would not be disabled if he stopped the substance use (20 CFR 404.1520(g) and 416.920(g), the claimant's substance use disorder is a contributing factor material to the determination of disability (20 CFR 404.1535 and 416.935). Thus, the claimant has not been disabled within the meaning of the Social Security Act at any time from the alleged onset date through the date of this decision. |

(Tr. at 12-24.)

In summary, the ALJ found that plaintiff's substance abuse was not only severe but also was a contributing factor material to any other finding that plaintiff is disabled. If substance abuse were eliminated from the picture, the ALJ found that plaintiff would not be disabled.

/////

4

ISSUES PRESENTED

Plaintiff has raised the following issues: A. Whether the ALJ Rejected the Examining and Treating Doctor's Opinions Without a Legitimate Basis; and B. Whether the ALJ Erred in Utilizing the Grids Instead of a Vocational Expert.

It is difficult to understand plaintiff's framing of the issues in light of the substance abuse elephant in the room. Plaintiff does not, and cannot, contest the finding of the ALJ that plaintiff is disabled if his substance abuse is considered. Thus, the real issue is not whether the ALJ improperly rejected physicians' opinions, none of which expressed an opinion on substance abuse, or whether the Grids were improperly used, but whether plaintiff's substance abuse was a contributing factor to his disability. In other words, even if plaintiff's designated errors were somehow found valid, the fact would still remain, if valid, that plaintiff's substance abuse would preclude benefits. The court will first discuss the dispositive issue of plaintiff's drug abuse and not dwell on the subsidiary issues which do not control the outcome of this case.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir.1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), *quoting* Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

/////

ANALYSIS

A. Plaintiff Has the Burden of Showing that the ALJ's Substance Abuse Contributing Factor Analysis Is not Supported By Substantial Evidence

In 1996, Congress amended 42 U.S.C. § 423 to eliminate drug and alcohol abuse as bases for finding disability. See Contract With America Advancement Act of 1996 § 105, 42 U.S.C. § 423(d)(2)(C) ("An individual shall not be considered to be disabled for the purposes of this subchapter if alcoholism or drug abuse would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled.") The ALJ herein followed the appropriate analysis for determining whether alcoholism or drug abuse is a contributing factor material to the determination of disability, as set forth in Bustamante v. Massanari, 262 F.3d 949 (9th Cir. 2001); see also, 42 U.S.C. S 423(d)(2)(C); 20 C.F.R. §§ 404.1535(a), 416.935(a). The ALJ first determined, pursuant to the Commissioner's five-step inquiry, whether plaintiff is disabled when the impact of substance abuse is considered. Only after finding plaintiff disabled did the ALJ then determine whether the applicant's substance abuse was a material contributing factor to any claimed mental problems.

All circuits which have considered the issue of drug or alcohol addiction as a contributing factor material to the finding of disability hold that the burden of proving a disability would exist in the absence of drug or alcohol abuse is squarely on the plaintiff. Parra v. Astrue, 481 F.3d 742, 748 (9th Cir. 2007); Doughty v. Apfel, 245 F.3d 1274, 1275-76 (11th Cir. 2001); Mittlestedt v. Apfel, 204 F.3d 847, 852 (9th Cir. 2000); Brown v. Apfel, 192 F.3d 492, 298 (5th Cir. 1999). The Ninth and other circuits so holding, have done so *after* the 1996 pronouncement in Emergency Message 96200 issued by the Social Security Administration which states in part: "[w]hen it is not possible to separate the mental restrictions and limitations imposed by DAA and the various other mental disorders shown by the evidence, a finding of 'not material' would be appropriate." http://policy.ssa.gov. Parra rejected a related emergency message, numbered 96-94, which stated in part: "where the MC/PC cannot project what limitations would remain if the

individuals stopped using drugs/alcohol, the MC/PC 'should record his/her findings to that effect' and 'the DE will find that DAA is not a contributing material factor to the determination of disability.'" Id. at 749, n. 5. The court reasoned that internal agency documents are not binding, and cannot be judicially enforced. Id. Furthermore, the agency pronouncements contradicted the purpose of the Contract with America Advancement Act which was "to discourage alcohol and drug abuse, or at least not to encourage it with a permanent government subsidy." Id., quoting Ball v. Massanari, 254 F.3d 817, 824 (9th Cir. 2001). As the court succinctly reasoned:

> An alcoholic claimant who presents inconclusive evidence of materiality has no incentive to stop drinking, because abstinence may resolve his disabling limitations and cause his claim to be rejected or his benefits terminated. His claim would be guaranteed only as long as his substance abuse continues - a scheme that effectively subsidizes substance abuse in contravention of the statute's purpose.

Id. at 750.

Finally, the court added that a plaintiff is in the best position to know whether she would still be disabled in the absence of substance addiction. Id. at 748. Therefore, these emergency teletypes have been superseded by Parra and other cases.

B. Whether Plaintiff Has Shown that the ALJ's Substance Abuse Findings Were Not Supported By Substantial Evidence

As mentioned above, plaintiff all but ignores the substance abuse findings. However, in contesting the ALJ's rejection of the mental health examiner, Dr. Andrews, plaintiff asserted that Dr. Andrews' failure to diagnose substance abuse, despite his knowledge that plaintiff was currently using alcohol and marijuana, indicated that Dr. Andrews did not think substance abuse was a contributing factor to plaintiff's paranoid disorder or personality disorder.

First, the ALJ found that plaintiff minimized his recent substance abuse before this one-time examining physician. According to Dr. Andrews' report, plaintiff had been involved with lawful and unlawful substances:

7

> Off and on since the age of 12 or 13.  He had a couple of beers the other day. Drugs: He is trying to quit pot.  He used to do speed all the time as an escape.  He has basically been clean a year from the speed.  He says it helped calm him down and helped him focus and concentrate.[Further report was made about cigarettes and coffee.]

(Tr. 187.)

Dr. Andrews made no diagnoses or conclusions about this reported usage.  However, the record reflects a much greater problem.

> In March 2004, he tests positive for cocaine, amphetamines, and THC (marijuana) and is also arrested for having drug paraphenalia.  The claimant seeks treatment at Shasta County mental health...He is unemployed, homeless, and wants to check out SSI payments.  The evaluator assesses a severe major depressive disorder, PTSD and polysubstance dependence.  He admits to using marijuana daily, alcohol in spurts, and "meth" daily in spurts.  He also admits to prior use of speed, cocaine, LSD, heroin, and mushrooms.  Numerous attempts are made to contact the claimant but he never returns for treatment.... He is also seen at the Shasta Regional Medical Center Emergency Department in September 2005.  He admits to alcohol use but inconsistent with his statements to Shasta County Mental Health, denies any illicit drug use...He is next seen in May 2006 after being assaulted in an altercation....He again denies any illegal drug use.

(Tr. 17.)

> Later in July 2006, the claimant tells Dr. Klein (back examiner) that he doesn't drink and is living in a Transitional Living Facility....In August 2007, the claimant is seen at Shasta Regional Medical Center and states "I drink and I want to detox.  I am on Seroquel, Prozac, Vicodin, a muscle relaxer and need a prescription for Empire Recover.  I can't quit drinking and slept in a bush last night. Sorry about the smell.  I do want to quit." He reports he is drinking 10-12 24 oz beers a day.  He states he used to do meth and the last time was two month previously....By December 2007, Shasta Regional Medical Center records note he reports he is off illegal drugs and alcohol.

(Tr. 18.)

> Shasta Community Health Center records for June 2008 reveal he continues his recurrent alcohol and THC use....He reports frequent alcohol abuse, although he expresses an interest to stop, and does attend AA meetings.  He states he has stopped excessive alcohol one day before the examination.  He denies current drug use despite his history of drug use.  He reports he had been drinking alcohol and has been assaulted by a stranger. ...In August 2008, he reports he has been off his medications for eight days and is feeling disoriented and confused.  He denies the use of drugs or alcohol.  However, the toxicology screen is positive for THC.  In addition, treating notes for September 2008 note he has been drinking.  October 2008 records note he drinks 3-40s [oz] per day when he has pain....The evaluator notes that the claimant has chronic pain complaints although he is in no apparent

8

> distress with normal strength in his legs and ability to walk on toes and heels. The evaluator declines to prescribe any opiates while he is actively using alcohol and that he needs to be clean of alcohol before his pain can be treated. He declines any modalities other than opiates. In November 2008....Dr. Greenberg continues to have reservations about prescribing opiates to a known substance abuser. Opiates have been prescribed in the past and the records show they do provide better pain control.

(Tr. 18-19.)

There cannot be doubt that plaintiff has a very problematic polysubstance abuse problem, and one that he frequently minimizes or denies. In his formal findings, the ALJ clearly found that plaintiff's substance abuse was a contributing factor to any underlying mental issues (if not the primary cause). It would be surprising if Dr. Andrews had rejected any notion of contributory drug abuse if he had been aware of plaintiff's real substance abuse record, but he clearly was not aware. Therefore, Dr. Andrews' silence on the critical question is immaterial. The State Agency physician in reviewing the record *did note* plaintiff's substance abuse addiction as a finding, if that common sense conclusion needed expert back-up. Tr. 215. In any event, it is plaintiff's burden to demonstrate from the record that the undisputable substance abuse could not have contributed to his alleged disabling mental condition.

The court notes that the ALJ went on to analyze Dr. Andrews' opinion which was made without reference to substance abuse. The ALJ gave "greatest weight" to Dr. Andrews' reports because the ALJ extrapolated a "clearly can work" conclusion from the report. The undersigned believes that such analysis was unnecessary in light of the first finding that plaintiff would be disabled considering the substance abuse, the ALJ's second finding that substance abuse contributed in a material fashion to whatever mental problems were possessed by plaintiff, and plaintiff's inability to show that such abuse did not affect his otherwise disabling mental conditions. Moreover, in retrospect, any self respecting mental health expert would need to know plaintiff's entire drug abuse history before rendering an opinion on plaintiff's mental health. For whatever reason, Dr. Andrews did not have this necessary information. The undersigned need not review the ALJ's attempted "what if" analysis, and whose post-hoc

9

interpretation of those rather sparse findings was correct.

In many cases involving substance abuse and mental health issues, it would behoove the ALJ to appoint a consulting expert to opine, based on a review of *all* the records, whether absent drug abuse, plaintiff's mental deficiencies would still be disabling. This opinion was not sought here, but plaintiff does not fault the development of the record. The SA physician did note substance abuse in the mental health review, but he did not address the question of whether plaintiff would be disabled even absent the substance abuse. Because the substance abuse problems were inextricably intertwined with any underlying mental problems, and there is not a substantial time in the record when plaintiff was not abusing drugs and/or alcohol, it probably was not possible for any expert to make a legitimate finding that absent substance abuse, plaintiff would still be mentally disabled. In some cases, where a plaintiff's mental problems were exhibited in the record when substance abuse was not a problem, such a separating diagnosis could be made, but this is not that case. The answer to the "materially contributing factor" question herein was fairly obvious.

The issue is slightly different for the physical back problem in that substance abuse would not be expected to exacerbate such a problem *per se*. The ALJ found from substantial evidence in the record that plaintiff's back problem qualified as a severe impairment. However, in this case, the ALJ noted that plaintiff's pain would be much reduced if he were able to be prescribed common opiate pain drugs such as Vicodin on a consistent basis. In the absence of being able to be prescribed such pain medication, plaintiff's substance abuse problem caused a material contributing effect on plaintiff's claimed physical disability. Again, it would appear unnecessary to evaluate the ALJ's findings on a theoretical "what if Vicodin could be prescribed basis."

However, because the issue of plaintiff's back condition can be separated from his substance abuse, absent the Vicodin problem, the court will perform an alternative analysis. Plaintiff contends that the ALJ improperly rejected the treating physicians' (physician's

assistants) reports regarding plaintiff's inability to work due to herniated discs and spinal stenosis, without providing legitimate reasons. The ALJ did not credit these reports because the MRI indicated that although plaintiff had spinal stenosis, it did not show a herniated disk. (Tr. at 20.)

The first report, dated June 21, 2006, diagnoses herniated disk and spinal stenosis which is expected to be temporary. The limitations are listed as "back pain ... limited function." (Id. at 242.) The next report, dated January 2, 2007, provides the same diagnoses, but states the condition is permanent. It also states that plaintiff is "unable to participate in any physical [illegible] or sit - stand for long periods." (Id. at 241.) The third report, dated April 2, 2008, repeats these diagnoses and states that plaintiff is unable to lift - bend - sit - stand for long periods." (Id. at 240.)

All of the reports are signed by physician's assistants. The regulations differentiate between opinions from "acceptable medical sources" and "other sources." See 20 C.F.R. §§ 404.1513 (a),(e); 416.913 (a), (e). For example, licensed psychologists are considered "acceptable medical sources," and social workers are considered "other sources." Id. Medical opinions from "acceptable medical sources," have the same status when assessing weight. See 20 C.F.R. §§ 404.1527 (a)(2), (d); 416.927 (a)(2), (d). No specific regulations exist for weighing opinions from "other sources." Opinions from "other sources" accordingly are given less weight than opinions from "acceptable medical sources." It is true that evidence from other sources may be considered where they show the severity of the impairment and its effect on a claimant's ability to work. 20 C.F.R. § 404.1513(d). These sources "are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." SSR06-03p. "Among the factors considered in assigning weight and/or rejecting 'other medical source' opinions is how often the source has seen the individual, and if her opinion has better supporting evidence than a conflicting acceptable medical source opinion." Reynolds v. Astrue, 2010 WL 3516895, *8 (E.D. Wash. September 3,

2010). The ALJ may consider this evidence but is not required to adhere to the treating physician rule in evaluating it. Koschnitzke v. Barnhart, 293 F.Supp.2d 943, 950 (E.D. Wisc. 2003). When giving such an opinion less weight, the ALJ must only provide reasons that pertain to that witness. Id.

Here, the ALJ reasonably referred to an MRI, dated July 19, 2006, which found grade I/II anterolisthesis at L5-S1, bilateral spondylolysis at L5, annular bulging at L5-S1 without canal stenosis, moderate bilateral foraminal narrowing at L5-S1, small disc protrusion at L4-5, annular bulging versus broad-based central disc protrusion at L3-4, with minimal canal stenosis. Disc material was contacting the right and left L4 nerve roots without significant displacement. There was dessication at L3-4, L4-5, and L5-S1. (Id. at 191.)

The ALJ's stated reason for refusing to credit the physician assistants' statements cannot be attacked in this case by plaintiff's non-record references to "disc" articles on the internet. While plaintiff cites to articles which effectively mean that the use of "herniated disc" and "bulging disc" are interchangeable, see www.spine-health.com/conditions/herniated-disc, other articles stand for the proposition that there is indeed a difference – with a bulging disc as a precursor to a herniated disc and not as serious a condition as a herniated disc, see *Herniated Disk vs. Bulging Disc: What's the Difference*, ww.mayoclinic.com/health/bulging-disc/AN00272, *Herniated and Bulging Discs,* www.spineuniverse.com/conditions/hernaited-disc/herniated-bulging-discs. The undersigned will not (and cannot) adjudicate these "battles of the articles." Rather, it is up to plaintiff to show *from the record* that there was no difference between the two. In the absence of such a showing, the court must accept the ALJ's determination.[2]

\\\\\

\\\\\

---

[2] The court and the parties often refer to medical articles on the web and accept them for use in Social Security cases. However, the use of these sources are for definitional purposes or for matters where there is no legitimate dispute concerning the accuracy or lack of dispute of the proposition referenced.

1  Further, little in the way of record refutation is required to reject these one page
2  forms³ signed by physician's assistants which contained no findings to support the asserted
3  limitations.
4  Other record evidence confirms the MRI and is much more reliable than the
5  aforementioned forms. For example, Dr. Klein, who evaluated the 2006 MRI in addition to
6  examining plaintiff, determined on July 20, 2006, that plaintiff had "back pain due to multilevel
7  disc disease, as noted on MRI, above, with stenosis and foraminal encroachment." (Id. at 196.)
8  The back exam revealed no tenderness, no muscle spasm, equal muscle tone throughout, negative
9  straight leg raising and normal range of motion. (Id. at 195.) This consulting internist opined
10 that plaintiff could lift and carry twenty pounds occasionally and ten pounds frequently. He
11 could walk and stand for six hours with breaks, in a work day, as well as sit for six hours. The
12 only other limitations were occasional climbing, kneeling, stooping and crouching. (Id. at 196-
13 97.)
14 More recently, plaintiff was seen by Dr. Sabet, a treating physician at Shasta
15 Orthopedics and Sports Medicine. On June 5, 2007, this physician saw plaintiff for low back
16 pain. After Dr. Sabet reviewed the MRI on file, and conducted an exam which showed forward
17 flexion at 75% of normal, and extension limited to 50% of normal, he diagnosed low back pain,
18 lumbar disc disorder without myelopathy, lumbosacral radiculitis, and spondylolistesis. (Id. at
19 237-38.) He ordered epidural injections and physical therapy, and noted that up to this point in
20 time, plaintiff had not received physical therapy, chiropractic manipulation, a home exercise
21 program or injections. (Id. at 238.) Plaintiff was directed to continue his current medication
22 which was Vicodin, sleep medication, Prozac and Flexeril at this time. (Id. at 238, 236.)
23 Dr. Sabet followed up with plaintiff on September 21, 2007. Prior to that visit,

---

25  ³ The purpose of the forms is to determine for the County Welfare Department whether
26 the subject has a physical or mental incapacity which prevents him from working. (Id. at 240-
43.)

13

1 plaintiff had received three epidural steroid injections to his back, with pain relief for only four
2 days afterward.  There was no mention of whether plaintiff followed through with physical
3 therapy. (Id. at 230.)  Plaintiff was diagnosed with back pain, lumbar disc disorder without
4 myelopathy, lumbosacral radiculitis and spondylolisthesis.  As the injections did not result in a
5 good response, Dr. Sabet opined that plaintiff might benefit from a "correction of his spondy."
6 Plaintiff was started on Neurontin and told to follow up with his private medical physician.  (Id.
7 at 231.)

8        The most recent evaluation of diagnostic studies of plaintiff's back was on June
9 26, 2008 when plaintiff went to the emergency room after diving into a river that was five feet
10 deep, while intoxicated, and hitting his head.  In addition to the MRI of the cervical spine which
11 showed no acute significant injury, the MRI of the lumbar spine was reviewed and the attending
12 physician determined that plaintiff had "mild degenerative changes, including some very minimal
13 spondylolisthesis of L5 on S1.  These do not appear to be acute." (Id. at 331.)[4]

14        This record indicates that plaintiff did not take care of his back.  The remainder
15 of the records do not reflect that plaintiff ever received physical therapy as ordered.  There are
16 additional referrals to physical therapy in 2004 but there is no record that plaintiff ever went to
17 physical therapy. (Id. at 128.)  Although a chart note dated October 12, 2004, directs plaintiff to
18 "continue" physical therapy, at this time plaintiff was poorly groomed, looked like he hadn't
19 showered in days and did not "volunteer much" to the medical practitioners. (Id. at 129.)  There
20 is no evidence that plaintiff related that he had attended physical therapy in the first instance.  In
21 fact, later records indicate that plaintiff had not received any physical therapy. (Id. at 236.)  The
22 ALJ may consider "unexplained, or inadequately explained, failure to seek treatment or follow a
23 prescribed course of treatment."  Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989).

24

---

25 [4] There is a myth in Social Security disability practice that once herniated, a disc can never repair itself.  This is simply not true.  See *Herniated Disc Treatment*,
26 www.orthopedics.about.com/cs/herniated disc/a/ruptured disc_2.htm.

The ALJ properly rejected the cursory chart notes completed by the physician's assistants in place of thorough medical records supported by objective evidence.

C. Whether the ALJ Erred in Utilizing the Grids Instead of a Vocational Expert

Plaintiff contends that the ALJ should have utilized a vocational expert due to his significant mental limitations, and because there is no evidence that if plaintiff stopped his substance abuse, an opiate medication such as Vicodin would relieve his pain. The Guidelines in table form ("grids") are combinations of residual functional capacity, age, education, and work experience. At the fifth step of the sequential analysis, the grids determine if other work is available. See generally Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573, 577-78 (9th Cir. 1988) (Pregerson, J., concurring).

The grids may be used if a claimant has both exertional and nonexertional limitations, so long as the nonexertional limitations do not significantly impact the exertional capabilities.[5] Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990), overruled on other grounds, Bunnell v. Sullivan, 947 F.2d 341 (9th Cir. 1991) (en banc). The ALJ, however, is not automatically required to deviate from the grids whenever plaintiff has alleged a nonexertional limitation. Desrosiers, 846 F.2d at 577 ("[T]he fact that a non-exertional limitation is alleged does not automatically preclude application of the grids."); 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(e)(2) (1996). The ALJ must weigh the evidence with respect to work experience, education, and psychological and physical impairments to determine whether a nonexertional limitation significantly limits plaintiff's ability to work in a certain category. Desrosiers 846

---

[5] Exertional capabilities are the "primary strength activities" of sitting, standing, walking, lifting, carrying, pushing, or pulling. 20 C.F.R. § 416.969a (b) (1996); SSR 83-10, Glossary; Cooper v. Sullivan, 880 F.2d 1152, 1155 n. 6 (9th Cir.1989). Non-exertional activities include mental, sensory, postural, manipulative and environmental matters which do not directly affect the primary strength activities. 20 C.F.R. § 416.969a (c) (1996); SSR 83-10, Glossary; Cooper, 880 F.2d at 1156 n. 7 (citing 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(e)). "If a claimant has an impairment that limits his or her ability to work without directly affecting his or her strength, the claimant is said to have nonexertional (not strength-related) limitations that are not covered by the grids." Penny v. Sullivan, 2 F.3d 953, 958 (9th Cir. 1993).

F.2d at 578 (Pregerson, J., concurring). "A non-exertional impairment, if sufficiently severe, may limit the claimant's functional capacity in ways not contemplated by the guidelines. In such a case, the guidelines would be inapplicable." Desrosiers, 846 F.2d at 577-78. The ALJ is then required to use a vocational expert. Aukland v. Massanari, 257 F. 3d. 1033 (9th Cir. 2001).

Again, plaintiff's issue is defeated by plaintiff's substance abuse, and the "usual arguments" concerning use of the Grids have little relevance, especially with respect to the asserted mental limitations. That is, a vocational expert could not be tasked with answering a question positing plaintiff's mental limitations because once the question was asked, the underlying basis for the limitation, primarily substance abuse, would automatically disqualify plaintiff from benefits – making the expert's opinion (probably that no jobs could exist for an addicted person) quite beside the point. As set forth above, *given the record*, there is no way to view plaintiff's mental limitations outside of the omnipresent substance abuse. The vocational expert issue is mooted by the found fact of substance abuse.

Further, focusing in on the physical limitations, the ALJ's finding that Vicodin would have helped to alleviate the pain, see e.g., Tr. 236, again makes the vocational expert issue a moot one. But even if the ALJ's finding in this regard were not supported by substantial evidence, there was not a non-exertional physical limitation, shown by plaintiff, which would have taken plaintiff outside the Grids. See Finding 16.[6] And again, because of the substance abuse, no non-physical (mental) limitation could be postulated.

*Conclusion*

The record is replete with instances of plaintiff doing nothing to ameliorate his condition, and doing everything to cause its deterioration. He dove into a five foot deep river from a height of six feet while intoxicated and with the knowledge that he had a bad back. He

---

[6] The ALJ inserted a typo in the paragraph explaining his finding when he referenced medium work. However, the remainder of the paragraph makes clear that the use of this term was simply an inadvertent typographical error.

did not follow through on recommended physical therapy, failed to return calls from medical practitioners or show up for appointments, (tr. at 161,), stopped medications for days, (tr. at 279), and failed to stop abusing substances so that he could receive pain medication. Most importantly, plaintiff has inconsistently represented his demonstrated use of alcohol and other substances, and he does not dispute the credibility finding in this regard. An award of benefits here would simply feed the addiction.

   Accordingly, IT IS ORDERED that plaintiff's Motion for Summary Judgment is denied, the Commissioner's Cross Motion for Summary Judgment is granted, and judgment is entered for the Commissioner.

DATED: 02/03/2011       /s/ Gregory G. Hollows

                 GREGORY G. HOLLOWS
                 U.S. MAGISTRATE JUDGE

GGH/076
Frizzell2914.ss.wpd